## In re HANSEN.

(District Court, S. D. California, S. D.   January, 1919.)

1. **Bankruptcy** ⬤⟫224—**Referee has jurisdiction to determine validity of chattel mortgage.**

   After a claimant files a claim as one secured by a chattel mortgage on the property in possession of the bankrupt, the referee has jurisdiction to determine in a summary manner the validity of the lien of the mortgage, especially where no objection to such jurisdiction was made.

2. **Chattel mortgages** ⬤⟫192—**Failure to record immediately invalidates as to existing creditors.**

   Under Civ. Code Cal. § 2957, requiring a chattel mortgage to be recorded immediately to be valid as against creditors, delay in recording invalidates mortgage, not only as against creditors who became such between the dates of the execution and the recording of the mortgage, but as against creditors who were such at the time the mortgage was executed.

3. **Courts** ⬤⟫366(1)—**Construction of state Code by state court is binding on Federal Courts.**

   The construction placed upon a section of the Civil Code of California by the Supreme Court of that state is binding on the United States courts.

In Bankruptcy.   In the matter of the estate of H. A. Hansen, bankrupt.   A petition by the trustee for sale of the property free and clear of the chattel mortgage claimed by Celestine Dack was granted by the referee, and the claimant asks a review of the order.   Order confirmed.

W. T. Craig, H. R. Archbald, and George M. Pierson, all of Los Angeles, Cal., for trustee.

V. J. Cobb, of Los Angeles, Cal., for creditor.

BLEDSOE, District Judge.   Celestine Dack duly filed her verified claim before the referee as upon a debt secured by a chattel mortgage. Subsequently the trustee filed a petition with the referee, setting up that certain personal property, part of it being property covered by the alleged chattel mortgage, was in the possession of the bankrupt and belonged to the bankrupt estate, and alleging that the chattel mortgage was invalid, and asked that the property be sold free and clear of the claimed lien of the chattel mortgage, and that an order be issued and directed to the said Celestine Dack, requiring her to show cause why such sale should not be had, etc.

Celestine Dack answered the petition for order to show cause, asserting that the mortgage was valid, and also filed an answer to the objection to her claim previously interposed by the trustee.   Upon the objection to the allowance of the claim, and upon the petition to show cause, a hearing was had, testimony taken, and an order made by the referee.   At no time does it appear that any objection to the jurisdiction or authority of the referee to pass upon the matters presented and involved in the various reports was made.   The referee found that the claim for $2,000, filed as a secured claim, should be disallowed as a secured claim, without prejudice to the right of the claimant to urge

⬤⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

its allowance as an unsecured claim. The order to show cause was made absolute, and the trustee was directed to sell the personal property then and there in the possession of the bankrupt. Revision of this order is sought before the court.

[1] Claimant having filed a secured claim, without doubt it thereupon became the duty of the referee to pass upon the question of whether or not the claim was secured by a chattel mortgage as asserted. The property being in possession of the bankrupt, and therefore in custodia legis, constructively, if not actually, the referee had the jurisdiction, as I understand the decisions, to determine in summary manner the existence or nonexistence of asserted claims to or liens upon such property. At least, no objection anywhere along the line to the jurisdiction of the referee having been made, it would seem that under the provisions of the Bankruptcy Act (Comp. St. §§ 9585–9656) summary jurisdiction, based upon consent of the parties involved, was proper. Bryan v. Bernheimer, 181 U. S. 188, 197, 21 Sup. Ct. 557, 45 L. Ed. 814, 5 Am. Bankr. R. 623.

[2] The principal question in the case involves a determination of whether the chattel mortgage relied upon by claimant, Dack, was valid. The note, to secure the payment of which the chattel mortgage was given, was dated February 1, 1917; the mortgage itself was dated February 1. It was acknowledged, and the affidavit required by the statute of California was made, February 20, 1917. The mortgage was thereupon delivered by the mortgagee to the mortgagor for recordation in accordance with the requirements of the statute, but it was not offered for recordation by the mortgagor until March 13, 1917. Thus a month and 12 days elapsed between the execution of the mortgage and its recordation, and 21 days elapsed between the acknowledgment of its execution and its recordation. All the property was situate in or near, and the parties resided within, the city of Los Angeles.

It was held by the Supreme Court of California, in a well-considered and subsequently approved case (Ruggles v. Cannedy, 127 Cal. 290, 53 Pac. 911, 59 Pac. 827, 46 L. R. A. 371), that section 2957 of the Civil Code of California required immediate recordation after execution, in order that a chattel mortgage might be valid as against creditors. The court (127 Cal. 298, 53 Pac. 914, 46 L. R. A. 371) said:

"We conclude upon this question that our law requires immediate recordation in lieu of immediate delivery, and that when such recordation is not effected the mortgage 'is void as against creditors of the mortgagor.' The penalty for a failure to record promptly in the case of a mortgage is identical with the penalty under section 3440 for a failure to deliver promptly in the case of a sale. In either case the failure results in a legal fraud against those whom the statute enumerates and protects."

True it is that in that case the court expressly declined to determine whether or not the mortgage was invalid as to creditors who became such before the making of the mortgage, and true it is that in the case at bar all of the creditors apparently became such previous to the making of the mortgage. However, the precise matter has been passed upon by other courts, and the reasoning there indulged in is very persuasive with me. Karst v. Gane, which concerned this precise point,

was a case arising in New York, and given careful consideration by the different courts which heard it. Before the Supreme Court, as reported in 61 Hun, 533, 16 N. Y. Supp. 385, it was held:

"Upon this subject it has been provided that every mortgage, or conveyance intended to operate as a mortgage, of goods and chattels, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed as directed in the succeeding section of the act. 3 Rev. St. (6th Ed.) p. 143, § 9. But it was objected on behalf of the mortgagees that this section of the statute was designed only for the protection of persons who became creditors of the mortgagors after the execution of the mortgages and prior to the time when they were filed. But the statute clearly has proceeded upon no such distinction, for it has declared the mortgage withheld from the files to be absolutely void as against the creditors of the mortgagor. Not the creditors who should become such between the time of the execution and the filing of the mortgage, but the creditors generally, including all persons sustaining that relation to the mortgagor during the time the mortgage is withheld from the files. If it had been intended to restrict it to those persons who should become creditors after the execution, and before the filing of the mortgage, language to that effect might reasonably be expected to be found in the section. And its entire absence is a decisive circumstance against the construction which the objection taken requires to be given to the section. The Legislature was actuated by no such design as the intention appears in the law. But the design and intent was to render the mortgage, or mortgages, absolutely void as against all persons who should be creditors of the mortgagor during the time, whether their debts were created before the execution of the mortgage or afterwards; and that is the effect which has been given to the statute when this view of it has been brought before the courts for consideration."

Thereafter before the Court of Appeals (136 N. Y. 316, 321, 32 N. E. 1073, at page 1074) it was said:

"It is undoubtedly true that one, and perhaps the most important, purpose of the act, so far as it applies to creditors, was to protect persons giving credit to the mortgagor in ignorance of the existence of a mortgage upon his property. But the legislative policy was broader than this single purpose. It is impossible to say that only creditors who became such during the existence of a mortgage may be injured by keeping the mortgage secret. It certainly is not improbable that in many cases antecedent creditors may be lulled into security, and forbear the collection of their debts at maturity, by the apparent unincumbered possession and ownership by the debtor of property covered by an undisclosed mortgage. The statute prescribes a general rule which must be observed in order to entitle a mortgagee to assert his lien as against creditors."

136 N. Y. 323, 32 N. E. 1075:

"We therefore conclude, upon the language of the act and upon authority, that the plaintiff was a creditor, within the act, although his debt existed when the mortgage to the defendants was executed. A simple contract creditor is as much within the protection of the statute as a creditor whose debt has been merged in a judgment."

136 N. Y. 325, 32 N. E. 1075:

"While the act does not, in terms, require an immediate filing of a mortgage, in order to make it valid against creditors or subsequent mortgagees or purchasers, the purpose of the act can only be satisfied by prompt and diligent action on the part of the mortgagee in filing his mortgage. The filing stands

as a substitute for immediate delivery, and an actual and continued change of possession, of the property, and avoids the conclusive presumption of fraud which would otherwise attach to the instrument under the act of 1833, in the absence of delivery and the change of possession of the mortgaged property. Some time will necessarily elapse between the execution and filing of the mortgage. Where it appears that due diligence was exercised in filing the mortgage, and there was no unnecessary delay, and no actual intervening lien has been acquired, there would seem to be no ground upon which subsequent lienholders could question the validity of the mortgage under the statute of 1833. The filing, under these circumstances, would be immediate, and make the mortgage valid as against liens subsequently acquired. But a delay of six weeks in filing the mortgage is not a compliance with the act. There were no circumstances rendering so long a delay necessary. There can be no doubt that if, during the delay in filing, a lien had been acquired by a creditor, the mortgage, as to such lien, would be void. The mortgage was, however, filed before the plaintiff's judgments and executions were obtained. This did not restore the validity of the mortgage, as against creditors whose debts were in existence during the default in filing the mortgage, although judgments or executions were not obtained until after the mortgage was in fact filed."

Another case from New York (Tooker v. Siegel-Cooper Co., 55 Misc. Rep. 68, 106 N. Y. Supp. 277; Id., 194 N. Y. 442, 87 N. E. 773) concerned a state of facts very similar in their substantial import to the facts of the case at bar. The indebtedness existed prior to the making or execution of the chattel mortgage. There a delay of less than a month between the execution and recordation of the chattel mortgage ensued. Thereafter and after recordation of the chattel mortgage, it was foreclosed. Subsequently suit was brought upon the indebtedness owing to the creditor and a judgment rendered in favor of the plaintiff. The question then arose as to whether or not the mortgage was valid as against the judgment creditor. In holding that it was not, the court said (55 Misc. Rep. 69, 106 N. Y. Supp. 278):

"In November, 1905, and February, 1906, the plaintiff recovered judgments on two promissory notes for $6,000 each, made by the defendant Hotel Regent Company on February 3, 1904, and maturing, respectively, one and two years from that date. Upon the return of unsatisfied executions, the plaintiff instituted this action in which she seeks to reach the proceeds realized from the sale of certain property under a chattel mortgage which she alleges was executed and delivered by the Hotel Regent Company to the defendant Siegel-Cooper Company on April 25, 1904, but which was not filed until May 23, 1904. An accounting by the Siegel-Cooper Company and a satisfaction of plaintiff's judgment is prayed; the right thereto arising under section 90 of the Lien Law, which declares: 'Every mortgage or conveyance intended to operate as a mortgage of goods and chattels * * * which is not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, is absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, is filed as directed in this article.' The chattel mortgage in question, given to secure an indebtedness of $56,080.97, the bona fides of which is conceded, was foreclosed in October, 1904, and the amount realized from the sale of the mortgaged property was $56,000."

55 Misc. Rep. 71, 106 N. Y. Supp. 279:

"The statute has been construed in favor of creditors along the broadest lines and in accordance with the most liberal principles of statutory construction. Technicalities have given way to equities; limitations, to liberality. The statute contemplates protection to creditors against secret arrange-

ments to withhold the filing of chattel mortgages. It commands publicity. The recognition of an agreement such as the one upon which the defendant relies would not only circumvent the statute, but would facilitate results which it was designed to prevent. The failure of the Siegel-Cooper Company to file the chattel mortgage in question within a reasonable time after its execution and delivery renders it void as against the plaintiff, and the relief prayed must be granted."

Thereafter the Court of Appeals (194 N. Y. 447, 87 N. E. 775) said:

"In order to make such an instrument effective against the creditors of the mortgagor, the lien law contemplates that it shall be placed upon file with reasonable expedition. Where it is put into the hands of a third party after execution upon no condition except that it shall not be delivered at all in the event of the payment of the debt before a specified date, and is subsequently delivered by him to the grantee, we think that such delivery. must be deemed to relate back to the date when the third party received it, and that a delay of nearly a month in placing it upon file was properly held by the trial court to be so unreasonable as to invalidate the mortgage against creditors. Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073."

A similar ruling has been rendered in this circuit by the District Court of the Western District of Washington (In re Mission Fixture & Mantel Co. [D. C. Wash.] 24 Am. Bankr. R. 873, 180 Fed. 263), which has been approved by the Circuit Court of Appeals of this circuit in National Bank v. Moore (C. C. A. 9th Cir.) 41 Am. Bankr. R. 409, 247 Fed. 913, 918, 160 C. C. A. 103. See, also, 11 C. J. 513, 514.

[3] The construction of the California Code, made by the Supreme Court of California, is binding upon this court, of course, and the rulings from other jurisdictions having been approved apparently by the Circuit Court of Appeals of this circuit, it follows that this court can do naught else but confirm the report of the referee.

Such will be the order.