RECONSTRUCTION FINANCE CORP. v. WEINER.

No. 49, Docket 22094.

United States Court of Appeals Second Circuit.

Argued Oct. 11, 1951.

Decided Nov. 7, 1951.

Harold E. Jacobsen, New York City, for appellant, Reconstruction Finance Corp.; Abram Glaser and Charles Hemmersley, New York City, of counsel.

Harry A. Margolies, New York City, for Louis S. Weiner, receiver and trustee.

Melbourne Bergerman and Jack J. Levinson, New York City, for C. I. T. Financial Corp., amicus curiae.

Before AUGUSTUS N. HAND, CHASE and WOODBURY, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On April 1, 1946, The Daunt Corporation, the bankrupt, as security for a loan, executed and delivered to the R. C., appellant, a chattel mortgage, dated that day, of all of the bankrupt's fixtures, furniture, machinery, tools, dies and equipment then located in Brooklyn, New York. This mortgage was filed the same day it was executed pursuant to the laws of the State of New York. Subsequent to its execution, the bankrupt acquired additional machinery and equipment located in Brooklyn and in Queens County, New York, and thereafter executed and delivered to the R. F. C. supplemental chattel mortgages covering the additional machinery and equipment, which were also filed for record.[1] Between May 15, 1948 and September 1, 1948, the bankrupt purchased a factory site in Trenton, New Jersey, and removed all of its machinery and other assets to that city. The R. F. C. was given notice of the removal and may be deemed to have consented thereto. On November 22, 1948, the bankrupt executed and delivered to the R. F. C. in New Jersey a further supplemental chattel mortgage upon all the properties referred to in the original and supplemental New York mortgages, and on the same day a copy of the New Jersey mortgage was filed for record in Trenton under the laws of the State of New Jersey. On November 22, 1948, the R.F.C. knew, or had reasonable cause to believe, that the bankrupt was insolvent. On November 24, 1948, the bankrupt filed a petition for an arrangement pursuant to Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., and on June 15, 1949, an order was entered directing the dismissal of that petition, the debtor was adjudged a bankrupt, and a receiver was appointed.

The receiver, and the trustee who succeeded him, filed petitions with the referee for an order declaring the mortgages held by the R.F.C. null and void as against the trustee. The R.F.C. moved to dismiss the petitions on the ground that they did not state claims on which relief could be granted. On the admitted facts set forth above, the referee denied the R.F.C.'s motion and entered an order to that effect, which was affirmed by the District Court without opinion.

The referee reached his conclusions as to the invalidity of the New York mortgages and the district judge followed those conclusions for the reasons expressed by the referee in his opinion as follows:

"On the conceded facts I find, as a matter of law, that the petitions state a claim upon which relief can be granted.

"Under the established rule of this Court I would be compelled to apply New Jersey law to the problem here presented were it not for the fact that the precise question here presented has never been passed upon by a New Jersey Court.

1. The execution date and the date and place of filing are shown by the following schedule:

| Date of execution | Date of Filing | County of Filing |
|---|---|---|
| June 6, 1946 | June 11, 1946 | Kings |
| Aug. 9, 1946 | Aug. 9, 1946 | Kings |
| Jan. 30, 1947 | Feb. 4, 1947 | Kings |
| | Feb. 4, 1947 | Queens |
| May 28, 1947 | June 4, 1947 | Kings |
| | June 4, 1947 | Queens |

"The question has, however, been discussed in quite a number of cases in various states, the great majority of which have held that the lien of a mortgage on chattels removed from one state to another with the knowledge and consent of the mortgagee is not recognized and is not enforceable in the second state against innocent purchasers, incumbrances or judgment creditors. This rule is based upon a variety of reasons, all of which, in my judgment, are logical and sound. Some states decided the question on the principle of public policy, * * * others on the principle of fraud or estoppel, * * * and still others on the principle of waiver * * *.

"In propounding this principle of law, the courts have carefully weighed the equities. The dominant factor underlying their reasoning is that an innocent party should not be made to suffer by reason of the wrongful act of another whose conduct occasioned such wrongful act. By failing to do what he could have done to protect his lien upon a removal of mortgaged chattels to another state, a mortgagee thereby loses his rights therein as against innocent third parties.

"Duly considering the facts and the legal principles propounded in the cases, I find that I am in accord with the majority rule expressed therein and accept it as applicable here."

We cannot agree with the court below that its decision was in accord with any majority rule or correctly disposed of the equities of the situation.

■ On the facts alleged in the petitions, the longest interval between the date of execution and the date of filing of any of the mortgages was seven days and we hold that the New York chattel mortgages were filed within a reasonable time as required by the decisions interpreting New York Lien Law, McK.Consol.Laws, c. 33, § 230. In the Matter of the Assignment of Paramount Finishing Corp., 259 N.Y. 558, 182 N.E. 180; Trimble v. Broun-Green Co., 105 Misc. 210, 172 N.Y.S. 726. It is not alleged that any creditors intervened between the dates of execution and the dates of filing as happened in Huber v. Ehlers, 76 App.Div. 602, 604, 79 N.Y.S. 150.

■ It is conceded that the chattel mortgages executed and delivered in New York would prevail over subsequent New Jersey purchasers or creditors if the mortgagees had not consented to the removal of the mortgaged property from New York to Trenton. But the trustee in bankruptcy, who is invested with the rights of a judgment creditor, argues that the consent to the removal invalidated the liens of the New York mortgages. To this we do not agree. Judge Goodrich in his "Handbook of the Conflict of Laws" (2d ed. 1938) says (at pp. 418–9): "It is, by the better view, immaterial that the mortgaged property has been taken to the second state with the mortgagee's consent" (mistakenly termed the "mortgagor").

And in discussing the equities of the situation, he says (at pp. 420–1): " * * * is there any more chance for deception in such a case than in a common case of bailment, or a removal of the mortgaged property from one county to another in the same state, in neither of which instances would the owner's or mortgagee's right be seriously questioned. When the property is removed to the second state, new rights may be created under the law of that jurisdiction. A local statute may give a garage keeper a lien for new work done which will have priority over the previously given valid chattel mortgage. If business convenience demands that the original mortgagee shall again record his mortgage after the property has been moved, a statutory provision like that in the Uniform Conditional Sales Act is the proper method by which to accomplish the result."

The American Law Institute reached the same conclusion as did Judge Goodrich. Section 270 of the Restatement of Conflict of Laws provides that: "If, after a chattel is validly mortgaged, it is taken into another state with the consent of the mortgagee, the interest of the mortgagee is divested by an attachment or execution levied by a creditor of the mortgagor in the second state only if a statute of the second state so provides." See also Section 271.

Thus, the effect on the validity of the mortgages of the removal of the property to Trenton depended on the law of the State of New Jersey. Restatement, Conflict of Laws § 269. There is a statute in New Jersey which voids chattel mortgages unless recorded. N.J.Rev.Stat. 46:28–5 N.J.S.A. But this statute has been interpreted as applying only to chattel mortgages executed on property in New Jersey, Parr v. Brady, 37 N.J.L. 201; Mygirack v. Lepore, 6 N.J. Super. 505, 69 A.2d 772, and, indeed, the statute so states by its very terms. See N.J. Rev.Stat. 46:28–7 N.J.S.A.

There is no statute in New Jersey which provides for the recording of or which invalidates foreign chattel mortgages, and the policy of New Jersey would seem to be in favor of recognizing such liens as against New Jersey purchasers and creditors. Thus, in Marvin Safe Co. v. Norton, 48 N.J.L. 410, 7 A. 418, the property was shipped into New Jersey with the consent of the conditional vendor and the New Jersey Supreme Court, by what may be an extreme decision, upheld a Pennsylvania conditional sale as against a subsequent New Jersey purchaser even though the conditional sale was invalid in Pennsylvania. See also Lane v. J. E. Roach's Banda Mexicana Co., 78 N.J. Eq. 439, 79 A. 365. The courts of other states have in various instances sustained the lien of a chattel mortgage which was valid in the original jurisdiction when the mortgaged property has been brought into the second state with the consent or knowledge of the mortgagee. Cobb v. Buswell, 37 Vt. 337; Smith v. Brooks, 154 Neb. 93, 47 N.W.2d 389; Farnham v. Eichin, 230 App. Div. 639, 246 N.Y.S. 133; Shapard v. Hynes, 8 Cir., 104 F. 449, 452, 52 L.R.A. 675, and Goetschius v. Brightman, 245 N.Y. 186, 192, 156 N.E. 660, appear to have adopted the same view.

We conclude that as the mortgages made in New York to the R. F. C. were there valid and would be so recognized under New Jersey law, the order of the district court should be reversed and the petitions of the receiver and trustee dismissed.

Accordingly, the proceeding is remanded to the district court with directions to dismiss the petitions.